Natalia WELLINGTON, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA,
et al., Defendants.

Civ. A. No. 93–452 (NHJ).

United States District Court,
District of Columbia.

March 31, 1994.

Bruce Jevone Terris, Kathleen L. Millian, Terris, Pravlik & Wagner, Lynn Edward Cunningham, Paula D. Scott, April Isabel Land, Neighborhood Legal Services Program, Washington, DC, for plaintiffs.

Wayne Chester Witkowski, Office of Corp. Counsel, D.C., Washington, DC, for defendants.

### MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 on behalf of themselves and a putative class of needy children and adults who allegedly have applied or attempted to apply for Medicaid benefits in the District of Columbia. In their amended complaint, they allege that the District of Columbia engages in practices and procedures that violate Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, the accompanying regulations, the Due Process Clause of the Federal Constitution, and D.C.Code §§ 3–205.26 & 3–205.55(a). Presently before the Court are defendants' motion to dismiss and their supplemental motion to dismiss the amended complaint. Upon consideration of the amended complaint, both motions to dismiss, the plaintiffs' oppositions thereto, and defendants' reply,[1] the Court will grant defendants' first motion to dismiss in part and will

---

1. On September 2, 1993, in response to a motion by counsel for defendants, the Court granted defendants' motion to file an over-size reply brief. The reply brief is sixty-four pages in length, a sizeable portion of which is given to single-spaced footnotes that are far longer than this one. Counsel's good-faith compliance with the Order is called into question by their mammoth submission. Counsel for the defense is admonished for such conduct and hereby directed to keep all future submissions within the page limitations set by the Local Rules of this court. Lengthy footnotes in defendants' submissions will be ignored or stricken.

deny it in part; the Court will deny the second motion to dismiss in its entirety.

Defendants challenge plaintiffs' "standing" to bring the section 1983 actions for the Title XIX violations. They rely not on the constitutional standing requirements of injury, causation, and redressability, but rather on a prudential limitation articulated in *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiffs' position a right to judicial relief." [2] Defendants further elaborate on their theory of standing in their allegation that "plaintiffs have failed to carry their burden to show the existence of an express or implied enforceable private right accruing to themselves and members of the putative classes under the subject provisions of Title XIX." Defs.' Reply at 11. Standing, by this definition, is contingent upon the existence of a private federal right enforceable under section 1983. *See Howe v. Ellenbecker,* 8 F.3d 1258, 1261 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1373, 128 L.Ed.2d 49 (1994). With respect to plaintiffs' Title XIX claims, then, the "standing" question collapses into the question of whether section 1983 provides a remedy—whether plaintiffs have a cause of action with respect to the relevant provisions of Title XIX.

## A. *Availability of Section 1983 Remedy for Title XIX Violations*

The Supreme Court has long held that § 1983 is an available remedy for violations of federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Court upheld such a remedy to allow private hospitals to enforce the "reasonable cost" reimbursement principles of the Boren Amendment to the Medicaid stat-

ute. *Wilder* established a "test," 496 U.S. at 509, 110 S.Ct. at 2517, to determine whether a federal statute creates a "right" enforceable under § 1983. First, a court must consider whether the statutory "provision was intended to benefit the putative plaintiff." 496 U.S. at 510, 110 S.Ct. at 2517. Next, the court must determine whether the statute reflects merely an unenforceable " 'congressional preference' for a certain kind of conduct rather than a[n actionable] binding obligation on the governmental unit." *Id.* (citing *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981)). Finally, a § 1983 remedy is unavailable when the interest the plaintiff asserts is "too vague and amorphous such that it is beyond the competence of the judiciary to enforce." *Id.* (citations and internal quotation marks omitted).[3] Defendants have not argued that Medicaid recipients are not intended beneficiaries of Title XIX, nor have they argued that Title XIX obligations are "vague and amorphous" as the *Wilder* Court apparently understood these terms.[4] Thus, the question for the Court to resolve on this motion to dismiss is whether the relevant statutory provisions satisfy *Wilder* 's "binding obligation" requirement.

■ In *Suter v. Artist M,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court precluded private party enforcement of the Adoption Assistance and Child Welfare Act (AACWA) under § 1983. As in this case, the *Suter* plaintiffs sought to enforce alleged rights created pursuant to the spending power of Congress. The *Suter* Court did not apply the *Wilder* criteria, but it did distinguish *Wilder* by contrasting the alleged "right-creating" statutory and regulatory requirements in both cases. The Court of Appeals for this Circuit has yet to determine the impact of *Suter. See LaShawn A.*

---

**2.** Defendants appear to view the Court's general description of the well-known prudential limitations on standing as a distinct prudential limitation in itself.

**3.** The Supreme Court has also held that § 1983 is not available to enforce federal statutory rights when Congress has foreclosed such enforcement. *Wright v. Roanoke Redev. & Hous. Auth.,* 479 U.S.

418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). The parties have not argued that such congressional foreclosure exists in this case.

**4.** To the extent *Wilder* 's "vague and amorphous" language was refined by *Suter,* it implicates claims by defendants that are properly before the Court.

*by Moore v. Kelly*, 990 F.2d 1319 (D.C.Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 691, 126 L.Ed.2d 659 (1994). This Court is not of the opinion that *Wilder* has been effectively overruled. *Accord, e.g., Stowell v. Ives,* 976 F.2d 65, 68 (1st Cir.1992). Rather, the judicial task after *Suter* is to apply the *Wilder* criteria with attention to what the federal statute (and implementing regulations) "actually require[ ]" the state agency receiving federal funds to do. *Suter,* — U.S. at —, 112 S.Ct. at 1368. If Congress leaves enforcement of its requirements "up to the state," *Id.,* then no § 1983 remedy exists. If the congressional mandate imposes more specific or objective obligations on the state, *see Wilder,* 496 U.S. at 514–20, 110 S.Ct. at 2519–23, then a private 1983 cause of action exists in the statutory beneficiaries to enforce those obligations. The Court will examine each of the statutory provisions implicated in this case under this standard.

### 1. Claim I—Infants of Medicaid–Recipient Mothers

■ Title 42 U.S.C. § 1396a(e)(4) provides:

A child born to a woman eligible for and receiving medical assistance under a State plan on the date of the child's birth shall be deemed to have applied for medical assistance and to have been found eligible for such assistance under such plan so long as the child is a member of the woman's household and the woman remains (or would remain if pregnant) eligible for such assistance. During the period in which a child is deemed under the preceding sentence to be eligible for medical assistance, the medical assistance eligibility identification number of the mother shall be submitted and paid under such number (unless the State issues a separate identification number for the child before such period expires).

This language unambiguously confers an obligation on participating states (1) to deem newborn infants to have applied for medical assistance as of the date of their birth (2) and to hold such infants eligible as of the date of birth. That statutory language is mandatory in its terms is surely not enough to confer a right enforceable under § 1983. *Suter,* — U.S. at —, 112 S.Ct. at 1367. However, the actual effect of such mandatory language is to create a binding obligation on the states themselves to treat infants of eligible mothers in a certain fashion. Unlike in *Suter,* — U.S. at —, 112 S.Ct. at 1369, this provision does not obligate states merely to submit a plan with certain features; it directs with specificity the way the states administer Medicaid in particular cases. Moreover, as defendants concede, there is no ambiguity problem. The statutory text is as clear as can be with respect to the timing of the state's obligations.

Defendants' attempt to link this provision with the statutory provision regarding the mother's eligibility ignores the obligation on states that § 1396a(e)(4) unambiguously imposes when a mother is eligible for Medicaid benefits. The Court agrees with the parties that the regulations implementing this provision inject no ambiguity into the congressional mandate. The statute creates a private right enforceable under section 1983.

### 2. Claim II—Outstation Enrollment

■ The relevant statutory provision, 42 U.S.C. § 1396a(a)(55) [first entry], provides that a state plan for medical assistance must:

Provide for receipt and initial processing of [the types of] applications of individuals for medical assistance [relevant to this case] ... at locations which are other than those used for the receipt and processing of applications for aid ... and which include disproportionate share hospitals ... and Federally-qualified health centers....

No regulations implement this section. Although the statutory text is mandatory and it speaks in such mandatory terms only with reference to the states' obligation to provide for outstation enrollment in their Medicaid plans, *neither* of these two countervailing facts is dispositive with respect to whether the provision unambiguously creates a privately enforceable right. *See Suter,* — U.S. at — – —, 112 S.Ct. at 1367–68 (carefully distinguishing *Wilder* ). *Suter* held that the AACWA's use of the term "reasonable efforts" left considerable discretion as to the means of enforcement up to the states them-

selves; the absence of further statutory guidance as to what constitutes a reasonable effort demonstrated that Congress had not unambiguously obligated the participating states. — U.S. at ——, 112 S.Ct. at 1368.

The statutory provision under consideration here differs considerably from the AACWA for *Suter* purposes. States are expressly required to provide for receipt and initial processing of Medicaid applications at disproportionate share hospitals and Federally-qualified health centers in their plans. They must administer those plans in "substantial compl[iance]" with Congress's requirements, or sanctions may be imposed. 42 U.S.C. § 1396c; *see also Wilder,* 496 U.S. at 512, 110 S.Ct. at 2518 (seeing § 1396c as a factor demonstrating a Congressional intent to create privately enforceable rights under § 1983).[5] The intake services this provision obligates the states to provide and the locations at which such services must be provided are explicitly enumerated in the statute. The Court concludes that 42 U.S.C. § 1396a(a)(55) creates a privately enforceable right.

### 3. Claim III—Acceptance of Applications

■ Plaintiffs claim that the District's welfare system has unlawfully failed to accept applications in certain instances. Claim III of the amended complaint is based on 42 U.S.C. § 1396a(a)(8), which requires a state plan to "provide that all individuals wishing to make application for medical assistance shall have opportunity to do so," and on 42 C.F.R. § 435.906, which states that "[t]he agency must afford an individual wishing to do so the opportunity to apply without delay."

Although the Supreme Court found in *Wilder* that the Boren Amendment's "reasonable rates" requirement was sufficiently objective to create an enforceable obligation on the states, *see* 496 U.S. at 512–15, 110 S.Ct. at 2518–20, *Suter* demonstrates that similar language was not enough to create such an

enforceable obligation absent "detail" in the underlying statute and regulations. No such detail appears in § 1396a(a)(8). Congress has not provided the states with sufficient detail to determine what constitutes "opportunity," nor has the pertinent regulation defined "delay" with the requisite sufficiency to satisfy *Suter.* That case appears to view such lack of specificity as a commitment to state agency discretion militating against privately enforceable rights.

The Court has examined the legislative history presented by plaintiffs, *see* Pls.' Oppn. at 23, but this also fails to define the obligation on the states in any greater detail than the statute or the regulation. Plaintiffs' reliance on *Perez v. Lavine,* 412 F.Supp. 1340 (S.D.N.Y.1976), is unavailing; that nonbinding case was decided long before *Thiboutot* and *Suter.* The sections fail to create the alleged enforceable right under section 1983.

### 4. Claim IV—Prompt Furnishing of Medicaid Benefits

■ Title 42 U.S.C. § 1396a(a)(8) further requires state plans to "furnish[ ]" medical assistance "with reasonable promptness to all eligible individuals." While the first half of this statutory subsection and the corresponding regulation failed to create the allegedly enforceable right with the required detail, 42 C.F.R. § 435.911 establishes firm outer limits for the time states may take in processing applications:

> The agency must establish time standards for determining eligibility and inform the applicant of what they are. These standards may not exceed ... [n]inety days for applicants who apply for Medicaid on the basis of disability; and ... [f]orty-five days for all other applicants.

As noted in the discussion in Section A2 of this opinion, it is not fatal to the creation of enforceable rights that a statute sets forth requirements for state Medicaid plans. In those situations, *Suter* specifically counsels that the obligation on the states be set out in

---

5. This language is readily distinguishable from the AACWA's "in effect" provision that the Supreme Court interpreted in *Suter.* — U.S. at ——, 112 S.Ct. at 1368. The language is also *not* evidence of a "comprehensive enforcement

scheme" sufficient to demonstrate a congressional intent to foreclose § 1983 remedies. — U.S. at ——— & n. 12, 112 S.Ct. at 1368–69 & n. 12.

**6**

detail. *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 432, 107 S.Ct. 766, 775, 93 L.Ed.2d 781 (1987), demonstrates that federal regulations may provide the detail necessary to create an enforceable federal right when the statutory language lacks the requisite specificity. The above-quoted regulation elaborates upon the Medicaid Act's "reasonable promptness" language with exactness. The Court finds that *Suter*'s "detail" requirement is satisfied, as a federal intention to create definite time limitations on state agency processing of Medicaid applications is evident. This intention gives rise to a right enforceable under section 1983. *Cf. Albiston v. Maine Commr. of Human Svcs.*, 7 F.3d 258, 264–65 (1st Cir. 1993) (construing similar language in AFDC statute as creating rights enforceable under § 1983).

5. *Claims VI and VII—Provision/Notification of EPSDT Services*

■ Section 1396a(a)(10)(A) reads:

A State plan for medical assistance must ... provide ... for making medical assistance available, including at least the care and services listed in [relevant] paragraphs ... of section 1396d(a)....

Section 1396d(a)(xi)(4)(A) defines medical assistance as including early and periodic screening, diagnostic, and treatment (EPSDT) services for eligible individuals under twenty-one years of age. Section 1396d(r) defines EPSDT services and sets minimum requirements for the screening, vision, dental and hearing services state plans must contain; it lists particular medical procedures that must be provided.

In § 1396a(a)(10)(A), Congress has specifically required the state plans to provide for making medical assistance, including EPSDT services, *available* to eligible individuals. Section 1396d(r) sets forth in considerable detail the minimum required EPSDT services that state plans must make available. The legislative history cited by plaintiffs further confirms the congressional intention to require states to provide specific EPSDT services. *See* Pls.' Oppn. at 28. The Court holds that this degree of specificity satisfies *Suter*'s "detail" requirement, and for reasons already explained in previous sections of this opinion, holds that an enforceable right exists for section 1983 purposes.

■ Section 1396a(a)(43) requires state plans to provide for informing all those under 21 years of age of the availability of EPSDT services. Implementing regulations obligate states to inform relevant classes of persons "effectively" about the availability of EPSDT benefits. *See* 42 C.F.R. § 441.56(a). The regulation defines the obligation on the states with sufficient specificity to create a federal right enforceable under section 1983 for purposes of this motion to dismiss.

Section 1983 provides a private remedy for all of the Title XIX provisions except those in plaintiffs' third claim. All of plaintiffs Title XIX claims except Claim III are sufficient to withstand the motion to dismiss.

**B.** **Plaintiffs' Claims under District of Columbia Law**

■ The Court disagrees with defendants that no common nucleus of operative fact exists with the federal claims that supports supplemental jurisdiction, *see* 28 U.S.C. § 1367, over plaintiffs' District of Columbia law claims. As presented in defendants' papers, the argument that D.C.Code §§ 3–205.26 and 3–205.55 do not apply to the asserted Medicaid benefits is unconvincing. On the present record, defendants' position appears contrary to the plain meaning of those statutory provisions. The Court's rejection of defendants' interpretation of D.C. law also disposes of their standing argument. *See* Defs.' reply at 17.

At this stage in the litigation, the Court is unwilling to dismiss the District of Columbia claims pursuant to its discretion as conferred by 28 U.S.C. § 1367(c). While the existence of a private right of action under district law may be a novel legal question, that alone is insufficient grounds for dismissal. Moreover, defendants have not convincingly argued that plaintiffs lack a cause of action under District of Columbia law.

**C.** **Plaintiffs' Other Claims**

■ Defendants' novel argument that the District of Columbia and its officials sued in

their official capacities are not "persons" for § 1983 purposes is unconvincing. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), did not hold that the District of Columbia is not a "person" for § 1983 purposes, nor has any subsequent case so held. Recent case law in this Circuit squarely rejects defendants' contention. *See, e.g., O'Callaghan v. District of Columbia*, 741 F.Supp. 273 (D.D.C.1990). The Court will not extend *Will* in the desired manner.

Noting the liberal substantive standard for motions pursuant to Fed.R.Civ.P. 12(b)(6), *see Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957), the Court finds that defendants have failed to sustain their burden in challenging the sufficiency of (1) plaintiffs' due process claim (Claim V) or (2) plaintiffs' allegations regarding the District of Columbia's official policy or practice liability.

### Conclusion

With respect to all but one of the alleged Title XIX violations in question, the plaintiffs have shown the existence of a § 1983 remedy. Without expressing any opinion on the merits of plaintiffs' claims, the Court holds that the claims are sufficient to withstand defendants' motion to dismiss. An appropriate order will issue.