OPINION OF THE COURT
Louis B. York, J.
Background
In pertinent part, this action is brought on behalf of numerous individual plaintiffs who allege that their rights under the Medicaid Act (42 USC § 1396) have been violated. They allege that the municipal and State defendants have failed to provide an adequate lead-poisoning screening, diagnosis, and treatment program as required of States that accept Federal dollars through the Medicaid program.
Plaintiffs are children who have suffered, and in many cases continue to suffer, from the grave consequences of lead poisoning. These well-documented toxic effects can include learning disabilities, brain damage, hyperactivity, loss of coordination, loss of appetite, abdominal pain, vomiting, convulsions, and in the most severe instances, death. (New York City Coalition to End Lead Poisoning v Koch, 138 Misc 2d 188, 189 [Sup Ct, NY County 1987].) The most common cause of acute lead poisoning is the ingestion of chips and dust from lead-based paint (id.), which was used extensively in New York City for decades, and persists in older, more dilapidated housing stock.
In the interest of public health the Federal Government, partly through its Medicaid plan, has promulgated measures designed to prevent, treat, and ultimately eliminate the lead poisoning that has plagued our Nation’s urban centers. (See, *427 42 USC § 1396.) When States accept Federal dollars through Medicaid, they concurrently agree to design and implement programs that meet these public health policies. (Wilder v Virginia Hosp. Assn., 496 US 498, 502 [1990].) This dispute centers on the effectiveness of New York’s plan under its Medicaid arrangements.
The primary issue is whether a private right of action exists to compel the State to improve its program where its implementation has fallen short. Plaintiffs argue that New York’s plan has failed, causing them great harm, and that 42 USC § 1983 provides a private cause of action, as their Federal rights under the Medicaid Act have been violated. Defendant Cesar Perales, in his capacity as (former) Commissioner of the Department of Social Services, moves to dismiss the complaint against him, arguing that plaintiffs have no private cause of action to enforce the Medicaid plan, and that plaintiffs fail to state a cause of action against him. For the reasons that follow, defendant’s motion is denied.
Procedural History
In 1985 plaintiffs brought this action seeking money damages and injunctive relief to compel defendants to implement an effective Medicaid-mandated lead-screening program. In March 1999, the parties stipulated to sever the individual damage claims against City defendants, and plaintiffs withdrew any such claims against the State defendant, leaving against the State defendant only the claims for injunctive relief. Defendant Perales’s motion to dismiss plaintiffs’ claims against him is the most recent in a case begun almost 15 years ago.
Analysis
A. Medicaid Act’s EPSDT Requirements
Medicaid is a comprehensive program of medical assistance for the poor. The program is jointly financed by the Federal Government and the States and is administered by the States. (Wilder v Virginia Hosp. Assn., 496 US 498, 502 [1990], supra.) While participation in the program is voluntary, once a State elects to participate, it must comply with certain Federal requirements. (Id.) Participating States must provide a range of mandatory medical services to recipients. (42 USC § 1396 et seq.) One of these mandatory services is early and periodic screening, diagnosis and treatment (EPSDT) for eligible individuals under age 21. (42 USC § 1396a [a] [43]; § 1396d [a] [4] [B].) The State must (1) inform all eligible individuals of the availability of EPSDT services, (2) provide screening ser *428 vices upon request, and (3) arrange for corrective treatment of all conditions detected by the screening. (Id.) The language of the Medicaid Act, which is central to this analysis, will be discussed in part B-2.
42 CFR 441.56 details the requirements of 42 USC § 1396a (a) (43), specifying that State programs must inform eligible individuals and families about EPSDT services, provide clear and nontechnical information about the benefits of preventative health care and where and how to obtain it, and assure that the services are delivered.
B. Appropriateness of Employing 42 USC § 1983
1. The Wilder Test
It has long been settled that 42 USC § 1983 provides a private cause of action to remedy violations of certain rights conferred by Federal statutes, not just those rooted in the Constitution. (See, Maine v Thiboutot, 448 US 1, 5 [1980].) In Wilder v Virginia Hosp. Assn. (496 US 498 [1990], supra), the Supreme Court held that violations of certain provisions of the Medicaid Act may be redressed under 42 USC § 1983. The Wilder Court formulated a three-part test to help courts determine when a Federal statute creates a right enforceable by an individual against the State: (1) the statute must be intended to benefit the plaintiff; (2) the provision must impose a binding obligation on the State, rather than signal a mere Congressional preference; and (3) the right protected by the statute must not be so “ 1 “vague and amorphous” ’ ” that its enforcement would strain judicial competence. (Wilder, 486 US, at 509.)
2. Parties’ Contentions Regarding Post -Wilder Decisions and Developments
There have been decisional and statutory changes in the years since Wilder (supra), and the parties dispute their relevance and meaning with regard to the instant case. Two years after Wilder the Supreme Court appeared to implicitly abandon its three-part test in Suter v Artist M. (503 US 347 [1992]). State defendant Perales argues that Suter cuts against plaintiffs’ claims, while plaintiffs contend that its relevant holding has been vitiated. Suter centered on a provision of the Adoption Assistance and Child Welfare Act of 1980 requiring State plans to provide that reasonable efforts be made to prevent removal of children from their homes prior to foster care placement. The Court ruled that the “reasonable efforts” provision was too vague to be enforceable under section 1983, as there was “[n]o further statutory guidance * * * as to how *429 ‘reasonable efforts’ are to be measured.” (Id,., at 360.) Further, the Court suggested that the plaintiffs’ argument was undermined by the fact that the statute did not directly require the State to use reasonable efforts, but merely to file a plan providing that such efforts would be made. (Id., at 358-359.) Defendant Perales relies heavily on Suter in his arguments regarding the inappropriateness of allowing plaintiffs to utilize section 1983 in seeking injunctive relief against New York State. This argument, at first blush, is compelling, as there is parallel language and a similar organizational scheme in Medicaid’s EPSDT provisions.
Two subsequent events, however, have largely removed Suter (supra) as a roadblock to Medicaid suits under section 1983, and resurrected the Wilder test, diminishing the weight of defendant’s reasoning. First, in 1996, in response to Suter, Congress enacted 42 USC § 1320a-2, known as the Boren Amendment, stating in relevant part that a Medicaid Act provision will “ ‘not * * * be deemed unenforceable because of its inclusion in a section * * * requiring a State plan or specifying the required contents of a State plan.’ ” (Conf Rep to HR 6, 140 Congressional Record-House, at 26608 [Sept. 28, 1994] [explaining that the Boren Amendment was crafted in response to Suter].) Second, in Blessing v Freestone (520 US 329 [1997]), the Supreme Court restated and relied on the Wilder test, while adding a layer of analysis. The Court held that courts must examine the precise language of any statute or regulation relied upon by a plaintiff as the source of the right to be enforced: “It [is] incumbent upon [plaintiffs] to identify with particularity the rights they claimed, since it is impossible to determine whether [the statute], as an undefined whole, gives rise to undefined ‘rights.’” (Id., at 342.) Defendant argues that Blessing’s requirements should prevent plaintiffs’ section 1983 suit. However, plaintiffs argue, and the court agrees, that Blessing simply raises the bar of specificity required of plaintiffs’ section 1983 claim, it does not rule out their claim as a threshold filter might.
With the Wilder test reinstated and the Blessing directive in mind, the court can reach the parties’ contentions regarding plaintiffs’ section 1983 claims. First, plaintiffs must be the statute’s intended beneficiaries. (Wilder, 496 US, supra, at 509.) The plain language of the relevant provisions indicates that all eligible Medicaid recipients under age 21 are the intended beneficiaries of EPSDT services. (See, 42 USC § 1396a [a] [43] [A], [B], [C] [“A State plan for medical assistance must *430 * * * provide for * * * (A) informing all persons in the State who are under the age of 21 * * * of the availability of [EPSDT] services * * * (B) providing * * *such screening services in all cases where they are requested”].) It is well settled that Medicaid-eligible children such as plaintiffs are the intended beneficiaries of EPSDT. (See, e.g., Miller v Whitburn, 10 F3d 1315, 1319 [7th Cir 1993]; Salazar v District of Columbia, 954 F Supp 278 [D DC 1996]; Wellington v District of Columbia, 851 F Supp 1 [D DC 1994].)
The Medicaid Act’s legislative history lends further weight to plaintiffs’ arguments regarding the first part of the Wilder test. “The EPSDT benefit is, in effect, the nation’s largest preventive health program for children.” (HR Rep No. 101-247, at 398-399, reprinted in 1989 US Code Cong & Admin News 1906, 2124.) The program’s well-defined purpose is “ ‘to discover, as early as possible, the ills that handicap our children’ and to provide ‘continued follow up and treatment so that handicaps do not go neglected.’ ” (HR Rep No. 99-860, at 15, reprinted in 1986 US Code Cong & Admin News 2401, 2416.) Thus, looking at both the plain meaning and legislative history of the Medicaid Act, it is clear the plaintiffs are its intended beneficiaries.
Second, plaintiffs must show the provision imposes a binding obligation on State defendant Perales, and does not merely express a Congressional preference. (See, Wilder, 496 US, supra, at 509.) The key to this determination lies in an examination of the Medicaid Act’s relevant EPSDT provisions. The court must decide whether the provisions are couched in mandatory or precatory terms. (Id., at 512.) If the language is mandatory, it points to a binding obligation, whereas precatory language indicates a preference. Courts have consistently held that the EPSDT provisions of the Medicaid Act are sufficiently mandatory to support a section 1983 claim. (See, e.g., Stanton v Bond, 504 F2d 1246, 1251 [7th Cir 1974] [EPSDT provisions are mandatory and unambiguous]; Miller, 10 F3d, supra, at 1319; Wellington, 851 F Supp, supra, at 6.)
This body of case law is buttressed by the plain language of the EPSDT provisions, which demonstrates the mandatory nature of the State’s obligation. The State plan “must * * * provide for * * * informing all persons * * * who have been determined to be eligible for medical assistance * * * of the availability of [EPSDT] services.” (42 USC § 1396a [a] [43] [A] [emphasis supplied].) The plan “must * * * provide for * * * such screening services in all cases where they are requested.” *431 (42 USC § 1396a [a] [43] [B] [emphasis supplied].) EPSDT services “shall at a minimum include * * * laboratory tests (including lead blood level assessment appropriate for age and risk factors).” (42 USC § 1396d [r] [1] [B] [iv] [emphasis supplied].) This language is unarguably mandatory, not the mere expression of Congressional preference, and therefore imposes a binding obligation on State defendant Perales, suppórting the appropriateness of plaintiffs’ section 1983 claim.
Further, the Medicaid Act’s legislative history supports plaintiffs’ contention that the Act imposes a binding obligation on the State. The House Report of the 1996 Act refers to the 1989 amendment of Medicaid as providing “four mandates,” one of which is the “mandatory coverage of early and periodic screening, diagnostic, and treatment services (EPSDT).” (HR Rep No. 104-651, at 331, reprinted in 1996 US Code Cong & Admin News 2183, 2244.) Taken together, the unambiguous language and legislative history of the Medicaid Act’s relevant EPSDT provisions satisfy the second part of the Wilder test.
Third, the EPSDT provisions of the Medicaid Act must not be so “ ‘ “vague and amorphous” ’ ” as to take their enforcement outside the competence of the judiciary. (Wilder, 496 US, supra, at 509.) Defendant Perales forcefully argues that this third portion of the test favors his position. Defendant cites Blessing and Suter (supra) in support of his contention that the Medicaid Act’s EPSDT provisions are too vague and amorphous to be judicially enforceable. Defendant claims that the Act’s “reasonable efforts” language creates generalized duties rather than enforceable rights, creating nothing more than a yardstick by which programs may be evaluated. (Blessing, 520 US, at 1361.) Defendant cites Visiting Nurse Assn. v Bullen (93 F3d 997, 1008 [1st Cir 1996]) for the proposition that States have “considerable flexibility” and “ ‘wide discretion’ ” in administering their Medicaid programs. While this language bolsters defendant’s position, the holding does not. Rather, Visiting Nurse holds that a Medicaid provider may sue to enforce the “equal access” provision of 42 USC § 1396a (a) (30) since that provision satisfies all three parts of the Wilder test. (Visiting Nurse, 93 F3d, at 1002-1006.) While the holding does not relate to the EPSDT provisions on which plaintiffs rely in the instant case, neither does it persuade the court that the provisions are too vague and amorphous to be judicially enforceable.
Defendant also relies on a Seventh Circuit case, arguing that not just any deviation from an approved State plan constitutes a violation of a right enforceable under section 1983. (Clifton v *432 Schafer, 969 F2d 278, 285 [7th Cir 1992].) The parties dispute the meaning of Clifton and its application to the case at bar, but this court need not reach a conclusion on its relevance, as the very same court, in a later opinion, held that Clifton does not apply to EPSDT claims. (Miller v Whitburn, 10 F3d 1315, 1319 [7th Cir 1993], supra.) Further, the Wilder Court made clear that noncompliance in practice may give rise to a cause of action even if a State plan complies with Federal requirements. (Wilder, 496 US, at 512, quoting 42 CFR 430.35 [1989]; see also, Salazar v District of Columbia, 954 F Supp 278 [D DC 1996], supra [if execution fails to match plan, Federal right is violated].) Based on the statutory language and the body of decisional Medicaid law that has developed, it is clear that the Medicaid Act’s EPSDT provisions are sufficiently specific to satisfy the third part of the Wilder test.
C. Injunctive Relief
The next issue is the appropriateness of injunctive relief against State defendant Perales, in the event liability were found. Defendant characterizes the relief sought as unduly burdensome, and argues that it would result in the micromanagement of State programs by individual plaintiffs, and of local programs by State officials. Plaintiffs counter that they do not seek to force the State to oversee and supervise the local districts, ensuring their compliance with the EPSDT requirements, but to enjoin the State to obey the express mandates of the relevant portions of 42 USC § 1396. At this stage, the court need not address the parties’ characterizations of the relief sought. What is sought is sufficiently clear, and what is appropriate will be determined by the court as circumstances develop.
Equitable relief is most appropriate when a State is receiving Federal funds, as here. (Stanton v Bond, 504 F2d 1246, 1251 [7th Cir 1974], supra.) When Congress wants to deprive the courts of equitable jurisdiction, it does so unambiguously, and it has not done so here. (See id.) It is within this court’s power to order the State to ensure it has a program in compliance with 42 USC § 1396. In a case defendant Perales cites on another point, the court makes clear that the reasonableness and adequacy of statutory compliance are judicially discern-able. (Visiting Nurse, 93 F3d, supra, at 1005.) Further, it would be hard to imagine a more fitting set of circumstances for injunctive relief. Here, impoverished children have been and continue to be harmed. To deny even the availability of an injunction mandating State compliance with EPSDT requirements would pose a grave injustice.
*433 D. Plaintiffs’ Failure to Exhaust State Administrative Remedies as a Bar to Initiating a 42 USC § 1983 Action
Defendant Perales simultaneously moves for dismissal of the case against him on the ground that plaintiffs fail to state a claim. Defendant asserts that because plaintiffs have not exhausted or even aggressively pursued their State administrative avenues for redress, they should be barred from bringing this section 1983 claim. However, it is stated unambiguously in the leading case in this field that the availability of State administrative procedures ordinarily does not foreclose resort to section 1983. (Wilder, 496 US, supra, at 523; see also, Patsy v Board of Regents, 457 US 496, 516 [1982] [exhaustion of State administrative remedies not required as prerequisite to bringing section 1983 action].) On a commonsense level, as this case was first brought in 1985, it cannot be reasonably argued that these children should be required to request fair hearings to complain about the State’s failure to notify them about the availability of EPSDT services, to ensure that they are screened for lead exposure at the medically appropriate intervals, and to make certain they receive prompt treatment to limit their injuries. Defendant Perales’s argument that plaintiffs’ navigating the fair hearing process, outlined in 42 USC § 1396a (a) (3) and 18 NYCRR 360-2.9, is a prerequisite to bringing a section 1983 case is without merit.
E. State Defendant’s Argument Regarding the City’s Responsibilities in Relation to the State’s
Finally, defendant Perales argues that seeking relief from the State of New York is inappropriate, as it would be the City defendants, if any, who have failed in the implementation of the EPSDT requirements. Defendant Perales argues the State’s primary role under this organizational scheme is supervisory. However, in joint State and Federal programs like the Medicaid plan, it is the State that is ultimately responsible for the effective administration of its plan, with the local districts acting only as the State’s agents. (Matter of Beaudoin v Toia, 45 NY2d 343, 347 [1978].)
The Court of Appeals has held that 42 USC § 1396a (a) (5)’s “single State agency” language creates an “inextricable chain of authority, with ultimate power reposed in the State.” (Matter of Thomasel v Perales, 78 NY2d 561, 570 [1991].) This strict requirement is rooted in a desire to focus accountability for effective implementation of the State’s Medicaid plan. (Hillburn v Maher, 795 F2d 252, 261 [2d Cir 1986], cert denied 479 US 1046 [1987].) Defendant Perales may not sidestep New York’s *434 responsibility for administration of its Medicaid plan by shifting this duty to City defendants.
As the court has indicated in the foregoing discussion, plaintiffs have properly asserted a 42 USC § 1983 claim against State defendant Perales. As a result, the court need not reach the merits of the parties’ substantive claims in order to deny defendant’s motion to dismiss. (Wellington v District of Columbia, 851 F Supp 1, 4 [D DC 1994], supra.)
Conclusion
Thus, it is ordered and adjudged that State defendant Perales’s motion to dismiss plaintiffs’ claims against him is denied.