MICHELLE P., by her next friend, Jim DEISENROTH, et al., Plaintiffs,

v.

James W. HOLSINGER, Jr., M.D., Secretary Cabinet for Health and Family Services, in his official capacity, et al., Defendants.

No. CIV.A. 3:02–23–JMH.

United States District Court,
E.D. Kentucky,
Frankfort.

Feb. 11, 2005.

Kenneth Zeller, Protection & Advocacy Division, William Stuart Dolan, Protection & Advocacy Division, Frankfort, KY, for Michelle P. by her next, Jim Deisenroth Next Friend Jim Deisenroth, Jonathon J.

by his guardian, Barbara Renfro Guardiam ad litem Barbara Renfro, Beth W. by her next friend, Cheryl Dunn Next Friend Cheryl Dunn, Porshia F. by her guardian, Jaquelyn Wolber Guardiam ad litem Jaquelyn Wolber, Plaintiffs.

Ann Truitt Hunsaker, Cabinet for Health Service, Frankfort, KY, Douglas J. Hallock, Morgan & Pottinger, P.S.C., Lexington, KY, Hal D. Friedman, Cooper & Friedman, PLLC, John T. McGarvey, Morgan & Pottinger, M. Thurman Senn, Morgan & Pottinger, Louisville, KY, David Earl Fleenor, Cabinet for Health & Family Services, Frankfort, KY, Douglas Gene Sharp, Morgan & Pottinger, Louisville, KY, Johann Frederick Herklotz, Cabinet for Health & Family Services, Wesley R. Butler, Cabinet for Health & Family Services, Frankfort, KY, for Marcia Morgan Secretary, Kentucky Cabinet for Health Services, Margaret Pennington Commissioner, Kentucky Department for Mental Health and Mental Retardation, Mike Robinson Commissioner, Kentucky Department for Medicaid Services, M.D. James W. Holsinger In His Official Capacity, Russ Fendley In his Official Capacity, Pat Wear Official Capacity, Defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Defendants' motion to dismiss [Record No. 41]. Plaintiffs have responded by filing a memorandum opposing Defendants' motion to dismiss [Record No. 44], and Defendants' filed a reply [Record No. 47]. The Court having reviewed all the filings, and being otherwise sufficiently advised, deems this matter ripe for review.

## FACTUAL BACKGROUND

Individual Plaintiffs, and the class they seek to represent, are adults with mental retardation and/or related conditions living with elderly or otherwise aging caretakers who are increasingly unable to provide the support and services which the plaintiffs need. The complaint alleges that each Plaintiff is eligible to receive community based residential Medical Assistance services and/or support services in his or her home, but has not received these services. Instead, each named Plaintiff has been placed on Kentucky's waiting list for community mental retardation and/or related conditions services.

Plaintiffs' complaint contains five claims, all essentially premised on the allegation that the defendants have violated the plaintiffs' rights under Medical Assistance law. Count I alleges that Plaintiffs are eligible for Medical Assistance Benefits yet have been denied Intermediate Care Facilities for the Mentally Retarded ("ICF/MR") services in violation of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A). Count II alleges that Defendants have failed to provide ICF/MR services with "reasonable promptness" in violation of the Medicaid Act, 42 U.S.C. § 1396a(a)(8). Count III alleges that Plaintiffs are receiving medical assistance benefits and services in an amount, duration, and scope that is less than the amount, duration, and scope of other eligible recipients in the Commonwealth, all in violation of the "comparability requirements" of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(B). Count IV alleges that Plaintiffs have been denied ICF/MR services and Home and Community Based Waiver ("HCBW") services in the most integrated setting appropriate to their needs in violation of Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973. Finally, Count V alleges that Plaintiffs have been denied freedom to choose between ICF/MR services

and HCBW services in violation of the Medicaid Act, 42 U.S.C. § 1396n(c)(2)(C).

## APPLICABLE STANDARDS OF REVIEW

Defendants have moved this Court to dismiss Plaintiffs' claims pursuant to Fed. R.Civ.P. 12(b)(1), arguing that the Court does not have subject matter jurisdiction in this case, and pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief may be granted. When considering a 12(b)(1) motion, the Court may consider matters outside of the record, without converting the motion to a motion for summary judgment, as the Court must determine whether or not the Court is even allowed to reach the merits of the case. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915–917 (6th Cir.1986). Plaintiffs bear the burden of demonstrating that subject matter jurisdiction exists. *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir.2000). With regard to the 12(b)(6) motion, this Court must accept all factual allegations in Plaintiffs' complaint as true. *Broyde v. Gotham Tower*, 13 F.3d 994, 996 (6th Cir.1994). The complaint may be dismissed only if it is clear that no relief could be granted on any set of facts that could be proven consistent with the allegations, and this Court's review amounts to a determination of whether it is possible for the plaintiffs to prove any set of facts in support of their claims that would entitle them to relief. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). This Court must ignore all outside evidence submitted by the parties in ruling on the motion to dismiss pursuant to 12(b)(6).

## DISCUSSION

### I. 42 U.S.C. § 1983

Parties invoking a court's jurisdiction must establish their standing in a case or controversy under Article III of the United States Constitution, a matter turning on the parties' personal stake in the dispute. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). In order to meet the "irreducible constitutional minimum" of Article III standing, Plaintiffs must demonstrate three elements: (1) an injury in fact, (2) a causal connection between the injury and the conduct of which they complain, and (3) redressability of the injury by the relief sought. In the instant matter, Defendants argue that, because the Medicaid Act was enacted pursuant to Congress' spending power, there is no individual right that may be enforced under 42 U.S.C. § 1983 for violations of said Act. As such, Defendants argue Plaintiffs cannot show injury in fact and thus, do not have standing.

42 U.S.C. § 1983 creates a cause of action against any person who, under the color of state law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It is true that, "[i]n legislation enacted pursuant to the spending power [such as the Medicaid Act], the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Nonetheless, in some circumstances, federal Medicaid provisions can create a right privately enforceable against state officers through § 1983.[1]

Courts that have found provisions of the Medicaid Act to create an enforceable

---

1. *See Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 511–12, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (holding that the Boren Amendment to the Medicaid Act created a right enforceable under § 1983); *Westside Mothers v. Haveman*, 289 F.3d 852, 862–863 (6th Cir.2002) (applying test set out in *Wilder* to determine if private right of action existed under 42 U.S.C.

right of action have done so under the three-part test set forth in *Blessing v. Freestone*, which provides:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (internal citations omitted). In 2002, however, the United States Supreme Court tweaked the first part of the *Blessing* test, and insisted nothing short of an unambiguously conferred right would support a cause of action under § 1983. *Gonzaga University v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). *Gonzaga* did not, as the Defendants would have it, "change the overall framework for discerning rights enforceable under § 1983" but "merely refined the first part of the three-part test, providing guidance to courts in determining whether a plaintiff is an intended beneficiary of a statute." *Sanchez v. Johnson*, 301 F.Supp.2d 1060, 1062 (N.D.Cal.2004).

Specifically, the *Gonzaga* Court stated that the language used in some of the Court's opinions may be read to suggest that a plaintiff can enforce a statute under § 1983, "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect." *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268. The Court clarified this potential misunderstanding by holding that, "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [1983]." *Id.* (emphasis in original). Thus, under *Gonzaga*, a plaintiff may bring suit under § 1983 as an intended beneficiary of a statute only if the statute unambiguously demonstrates congressional intent to confer an individual or personal right on that plaintiff. *Id.* "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Id.* at 284, 122 S.Ct. 2268.

A statute unambiguously demonstrates congressional intent to confer individual or personal rights by using "rights-creating language." *Gonzaga*, 536 U.S. at 287, 122 S.Ct. 2268. Such language much clearly impart an "individual entitlement," and have and "unmistakable focus on the benefited class." *Id.* Here, Plaintiffs seek to enforce the provisions of the Medicaid Act found in 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(8), 1396a(a)(10)(B), and 1396n(c)(2)(C). The Court will analyze each, in turn, below.

A. *Making Medical Assistance Benefits Available and Delivering Medical Assistance with Reasonable Promptness— §§ 1396a(a)(10)(A) and 1396a(a)(8)*

■ First, Plaintiffs seek to enforce the right to acquire ICF/MR services, by vir-

---

§ 1983 for noncompliance with the screening and treatment provisions of Medicaid Act); *Doe By & Through Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir.1998) (finding that the reasonable promptness mandate created a federal right enforceable under § 1983); *Wood v. Tompkins*, 33 F.3d 600, 608 (6th Cir.1994) (holding that the freedom of choice provision created a federal right of action);

*Sabree v. Richman*, 367 F.3d 180, 183 (3d Cir.2004) (finding that 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), and 1396d(a)(15) "unambiguously confer rights" vindicable under 42 U.S.C. § 1983). This Court has previously found a private right of action under 42 U.S.C. §§ 1396a(a)(1)(A)(i), 1396a(a)(3) and (4), and 1396a(a)(17). *Kerr v. Holsinger*, 2004 WL 882203 (E.D.Ky.2004).

tue of 42 U.S.C. § 1396a(a)(10)(A). Section 1396a(a)(10)(A) provides in relevant part: "[a] State plan for medical assistance must...provide...for making medical assistance available,...to...all [eligible] individuals..." 42 U.S.C. § 1396a(a)(10)(A). The provision regarding ICF/MR services is found at 42 U.S.C. § 1396d(a)(15) which provides, in part:

> "[f]or purposes of this title... [t]he term 'medical assistance' means payment of part or all of the cost of the following care and services...for individuals...who are [eligible:]...services in an intermediate care facility for the mentally retarded..."

42 U.S.C. § 1396d(a)(15). Plaintiffs also seek to enforce the right to acquire ICF/MR services with "reasonable promptness" as required by 42 U.S.C. § 1396a(a)(8). The language of that statute declares that a state "must provide...assistance...with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

To determine whether these statutes provide Plaintiffs with "an unambiguously conferred right to support a cause of action brought under § 1983" *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268, the Court looks to the *Blessing* test as refined by *Gonzaga*. Read together, the language of 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(15), and 1396a(a)(8) articulates that a state "must provide" plaintiffs with "medical assistance," including ICF/MR services, with "reasonable promptness." It is clear that the statutes enumerate specific, as opposed to "vague and amorphous," rights, and that the obligation on the states is unambiguous and binding. The Court further finds that the statutes contain sufficient "rights-creating language," clearly imparting an individual entitlement on the benefited class, including Plaintiffs. Moreover, the statutory references to the individual do not appear "in the context of describing the type of 'policy or practice' that triggers a funding prohibition" *Gonzaga*, 536 U.S. at 288, 122 S.Ct. 2268, but rather speak to what individual recipients of Medicaid are entitled. Agreeing with the reasoning provided by our sister circuit, the Court finds that the provisions of the Medicaid Act requiring states to provide medical services in an intermediate care facility for persons with mental retardation with reasonable promptness, unambiguously confer individual federal rights enforceable under § 1983. *See Sabree v. Richman*, 367 F.3d 180 (3d Cir.2004).

**B.** *Providing Comparable Services—42 U.S.C. § 1396a(a)(10)(B)*

■ Defendants likewise argue that plaintiffs do not have a private right of action under § 1396a(a)(10)(B) which provides:

> A State plan for medical assistance must—
>
> *     *     *     *     *     *
>
> (10) provide—
>
> *     *     *     *     *     *
>
> (B) that the medical assistance made available to any individual described in subparagraph (A)—
>
> (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
>
> (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A).

42 U.S.C. § 1396a(a)(10)(B). Subparagraph (A) describes the various individuals to whom medical assistance, including the services described in Section 1396d(a)(15), must be provided. 42 U.S.C. § 1396a(a)(10)(A). It is alleged, and the Defendants do not dispute, that Plaintiffs are just such individuals. As with Sections 1396a(a)(10)(A) and 1396a(a)(8), the Court

finds that Section 1396a(a)(10)(B) creates an enforceable right of action under § 1983.

First, the provisions of the statute are clearly intended to benefit Plaintiffs as the terms focus directly on the amount, duration, and scope of medical assistance due to qualified individuals. The individually focused terminology, "the medical assistance made available to any *individual*... shall not be less in amount, duration, or scope that the medical assistance made available to any other such *individual*... " 42 U.S.C. § 1396a(a)(10)(B)(i) (emphasis added), unquestionably confers the sort of individual entitlement that is enforceable under § 1983. *See Martin v. Taft*, 222 F.Supp.2d 940, 977 (S.D.Ohio 2002), see also *Antrican v. Buell*, 158 F.Supp.2d 663, 671–72 (E.D.N.C.2001), *aff'd*, 290 F.3d 178 (4th Cir.2002). Second, the statute's provisions are prefaced in mandatory terms so as to "unambiguously impose a binding obligation on the States." *Blessing v. Freestone*, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569. Third, the phrase "not less than" and "equal access" are sufficiently specific and detailed, as opposed to vague and ambiguous, to create an enforceable right under § 1983. *See Martin*, 222 F.Supp.2d at 977; *Antrican*, 158 F.Supp.2d at 670. Therefore, the Court concludes that the comparability of services provision, 42 U.S.C. § 1396a(a)(10)(B), is privately enforceable under § 1983.

C. *Freedom to Choose—42 U.S.C. § 1396n(c)(2)(C)*

■ Finally, Defendants maintain that the freedom of choice provision, 42 U.S.C. § 1396n(c)(2)(C), does not provide Plaintiffs with a claim enforceable under § 1983. Section 1396n(c)(2)(C) states as follows:

(2) A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary that -

\* \* \* \* \* \*

(C) such individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded are informed of the feasible alternatives, if available under the waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded[.]

42 U.S.C. § 1396n(c)(2)(C).

In 1981, Congress created the Home and Community–Based Waiver Program (HCBW) so that individuals who would otherwise be cared for in a ICF/MR facility receive services in their own homes and in home-like settings. The regulations provide that, "Section 1915(c) of the Act permits States to offer, under a waiver of statutory requirements, an array of home and community-based services that an individual needs to *avoid institutionalization*." 42 C.F.R. §§ 441.300 (emphasis added). Under the waiver provisions of the Act, states may include as "medical assistance" the cost of home or community-based services which, if not provided, would require care to be provided in a ICF/MR. 42 U.S.C. §§ 1396n(c); 42 C.F.R. §§ 435.217. Under the waiver, monetary respite is available for care-givers which enables family members and others to provide care in the community. Individuals in need of the type of care provided by ICF/MR are eligible for HCBW services. Kentucky has received a waiver from the Secretary that allows it to provide HCBW services such as case management, homemaker, home health aids, and adult day health and respite care, pursuant to 907 KAR 1:160.

Plaintiffs assert that 42 U.S.C. § 1396n(c)(2)(C) entitles them to be informed of the services available to them and to chose between ICF/MR services and HCBW services. Defendants counter, that this freedom of choice is not absolute and, due to budget constraints, such services are not currently feasible. Feasibility, however, is not the question currently before the court. In Defendant's motion to dismiss, they assert only that the instant provision does not create a private right of action under Section 1983. The Court disagrees.

Interpreting the statute according to the *Blessing* test as modified by *Gonzaga*, the Court finds that the language in this section speaks in terms that are "rights creating." First, the assurances set forth in the statute are clearly intended to protect the health and welfare of individuals such as Plaintiffs. The individually focused terminology confers the sort of individual entitlement enforceable under § 1983. Further, the section imposes a mandatory duty on the participating state—a state must provide the enumerated assurance in order to obtain a home care waiver. Finally, the Court finds that the concept of a state providing assurances that it has informed eligible individuals of their options, and provided them with ICF/MR services (if the individuals so choose), is not so vague or ambiguous as to be unenforceable by the judiciary. Accordingly, the Court finds that the freedom of choice provision, 42 U.S.C. § 1396n(c)(2)(C), meets all of the criteria for individual enforcement under Section 1983.

## II. ADA Claims

■ Count IV of the complaint alleges that Plaintiffs have been denied ICF/MR and HCBW services in the most integrated setting appropriate to their needs in violation of Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973. Defen-

dants move to dismiss these claims on the basis that they fail as a matter of law. Defendants predicate their argument on their interpretation of the United States Supreme Court case, *Olmstead v. L.C. by Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

The plaintiffs in *Olmstead* were mentally retarded women being treated in institutional settings. *Olmstead,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). The women challenged their confinement arguing that the "state's failure to place the plaintiffs in a community-based treatment program violated the ADA." *Martin,* 222 F.Supp.2d at 968–69. The Court found that unjustified institutionalization of mentally disabled persons, who are qualified to participate in existing state community-based programs, is a form of discrimination and is prohibited by the ADA. *Olmstead,* 527 U.S. at 597, 600–01, 119 S.Ct. 2176. Defendants claim that the *Olmstead* ruling is solely applicable to the "unjustified placement or retention of persons in institutions." *Olmstead,* 527 U.S. at 596, 119 S.Ct. 2176. The holding in *Olmstead,* however, has also been applied to individuals who live at home but are in need of community-based services—individuals such as Plaintiffs. *See Martin v. Taft,* 222 F.Supp.2d 940 (S.D.Ohio 2002).

Here, Defendants argue that granting the relief Plaintiffs request would "fundamentally alter" Kentucky's ICF/MR and HCBW services and, as such, precludes Plaintiffs' claim for relief. The Court in *Olmstead* was clear that,

in evaluating the fundamental alteration defense, a court must carefully consider the state's legitimate interest in providing a variety of services for persons with mental disabilities, including institutional-based services, as well as the state's interest in allocating available resources fairly and evenhandedly.

**770**

*Martin,* 222 F.Supp.2d at 971. As the Court wisely held in *Martin,* since the Plaintiffs do not seek the creation of new programs, whether the relief requested would result in a fundamental alteration "is a matter that can be resolved only by a careful examination of the facts and circumstances...." *Martin,* 222 F.Supp.2d at 975. Accordingly, the Court deems this argument inappropriate for a Fed.R.Civ.P. 12(b)(6) motion.

## CONCLUSION

For the reasons discussed above, **IT IS ORDERED**, that Defendants' motion to dismiss [Record No. 41] be, and the same hereby is, **DENIED.**