10 F.3d 1315
 43 Soc.Sec.Rep.Ser. 35, Medicare&Medicaid Guide P 41,937
Tiffany MILLER, by her next friend DeAnna MILLER, Plaintiff-Appellant,
v.
Gerald WHITBURN, Secretary of the Wisconsin Department of
Health and Social Services, Defendant-Appellee.
 No. 93-1976.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 10, 1993.
Decided Dec. 1, 1993.
 
 T. Christopher Kelly, Madison, WI, G. David Miller, Jr. (argued), Susemihl, Lohman, Kent & McDermott, Walter S. Rouse, Anderson, Campbell & Laugesen, Colorado Springs, CO, for plaintiff-appellant.
 Donald P. Johns (argued), Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for defendant-appellee.
 Before CUDAHY and RIPPLE, Circuit Judges, and ALDISERT, Senior Circuit Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 Tiffany Miller is five years old. She suffers from a condition known as "short-bowel syndrome." As a result of this disability, Tiffany must be fed exclusively through intravenous total parenteral nutrition (TPN), a procedure in which a feeding catheter is placed directly into Tiffany's stomach. Another catheter in her stomach drains all secretions. An undesired byproduct of TPN feeding is progressive liver deterioration. The only way to restore Tiffany's liver function is to replace the liver, along with her lower intestine, in a liver-bowel transplant. Without such a transplant, Tiffany is almost certain to die from liver failure.
 
 
 2
 There is no dispute that Tiffany is entitled to Medicaid benefits. The Medicaid statute, 42 U.S.C. Sec. 1396 et seq., authorizes federal grants to states, thus enabling them to provide medical care to persons otherwise unable to obtain it. Although participation in Medicaid is optional, once a state has chosen to take part, as Wisconsin has, it must comply with all federal statutory and regulatory requirements. Even so, states retain a great deal of discretion in determining which medical services to cover under their Medicaid plans. There are, however, seven "mandatory medical services" for which a state Medicaid plan must provide in order to qualify for federal funding. See 42 U.S.C. Sec. 1396a(a)(10)(A). Included among these are "early and periodic screening, diagnostic, and treatment services" (EPSDT services) for persons under age 21. 42 U.S.C. Sec. 1396d(a)(4)(B). EPSDT services include certain screening, vision, dental and hearing services, 42 U.S.C. Secs. 1396d(r)(1)-(4), as well as "[s]uch other necessary ... treatment ... to correct or ameliorate ... conditions discovered by the screening services...." 42 U.S.C. Sec. 1396d(r)(5). Tiffany contends that a liver-bowel transplant, which all agree is required to sustain her life, is such "necessary treatment."
 
 
 3
 Whitburn[1] responds that pursuant to 42 U.S.C. Sec. 1396b(i)(1) a state may, at its discretion, decide which, if any, transplants to fund.[2] Tiffany rejoins that Sec. 1396b(i)(1) does not give participating states absolute discretion to decide which transplants to fund and that, even if it does so provide in general, Sec. 1396d(r)(5) trumps Sec. 1396b(i)(1) and obligates Medicaid-participating states to pay for medically necessary transplants for those individuals, such as Tiffany, who qualify for EPSDT services. In this respect, she notes that a state Medicaid plan must cover EPSDT services "whether or not such services are [otherwise] covered under the State plan." 42 U.S.C. Sec. 1396d(r)(5). Indeed, two other circuits recently confronted with this apparent tension between two provisions of the Medicaid statute have concluded (1) that Sec. 1396b(i)(1) does not confer upon the states absolute discretion as to which transplants to cover and (2) that Sec. 1396d(r)(5) does compel Medicaid-participating states to provide funds for all medically necessary transplants for children who otherwise qualify for EPSDT services. Pittman v. Secretary, Florida Department of Health & Rehabilitative Services, 998 F.2d 887, 891 (11th Cir.1993) and Pereira v. Kozlowski, 996 F.2d 723, 727 (4th Cir.1993). But see Ellis by Ellis v. Patterson, 859 F.2d 52, 55 (8th Cir.1988) (holding that Sec. 1396b(i)(1) gives Medicaid-participating states complete discretion to decide which, if any, transplants to fund). Pittman and Pereira are in conflict with Judge Crabb's opinion in this case. But we need not resolve that conflict because the issue decided by the Fourth and Eleventh Circuits is not properly before us.
 
 
 4
 When Tiffany applied for Medicaid coverage for her proposed liver-bowel transplant, the Department denied her request for one reason and one reason only: the Department considered the procedure "experimental." In a letter to Tiffany's physician, Dr. Alfred D. Dally, Chief Medical Consultant for the Department's Bureau of Health Care Financing, gave the following explanation of the Department's refusal to fund Tiffany's transplant:
 
 
 5
 We are writing in response to your recent request to refer Tiffany Miller ... to the University of Pittsburgh for a liver-intestinal organ transplantation. The Wisconsin Medical Assistance Program considers intestinal transplants to be experimental, and therefore not reimbursable. This is consistent with Wisconsin Administrative Code for Medical Assistance HSS 107.03(4) which prohibits medical assistance coverage for services considered experimental.
 
 
 6
 Department's Br. in Opposition to Motion for Temporary Restraining Order, Attachment D (R.O.A. 8). We have scoured the record in this case and have found no other reason given for the Department's refusal to pay. Unlike its Florida and Virginia counterparts in Pittman and Pereira, respectively, the Department did not rely upon Sec. 1396b(i)(1) as a basis for denying payment. Rather, the Department took the position that a liver-bowel transplant was not a "necessary treatment" because its effectiveness is unproven.[3]
 
 
 7
 As a result, the issue in this litigation has been from the outset the judicial reviewability and propriety of the Department's determination that liver-bowel transplants are experimental. See, e.g., Complaint and Motion for Temporary Restraining Order at 3 (R.O.A. 2) ("The [Department] has seriously erred in its characterization of the procedure as being experimental and therefore the denial of the transplant services are in direct contravention of Federal Law providing coverage for necessary medical treatment for needy children."); Department's Br. in Opposition to Temporary Restraining Order at 7 (R.O.A. 8) ("The department may limit reimbursement for those treatments considered experimental and not generally recognized as effective by the medical profession...."); Plaintiff's Supplemental Brief at 1 (R.O.A. 14) ("The Plaintiff's right, pursuant to 42 U.S.C. Sec. 1983, to challenge the [Department's] decision that liver-bowel transplants are experimental is the issue before the court."). The district court twice concluded that the Department's determination was not reviewable. Transcript of Proceedings, February 3, 1993, at 6 (denial of preliminary injunction) ("[The Department] has made the decision that the liver-bowel transplants that are presently undertaken at the University of Pittsburgh are not proven and effective. This kind of a decision made in what was a legislative setting, as nearly as I can tell at the present time, is simply not subject to federal court review."); Miller v. Whitburn, 816 F.Supp. 505 (W.D.Wis.1993) (denial of permanent injunction). Rejecting this conclusion, we vacate and remand.
 
 
 8
 We agree with the statement of Tiffany's counsel at oral argument that the issue in this case is whether a Medicaid recipient may "challenge the reasonableness of a state's decision regarding the medical necessity of a life saving procedure." Specifically, Tiffany contends that the Department's characterization of liver-bowel transplantation as experimental is "arbitrary and capricious" and asks for judicial review of that determination. Tiffany does not contend that the Department must pay for her liver-bowel transplant simply because her physician has determined that it is a medically necessary treatment. Rather, Tiffany argues that the transplant procedure is a "necessary treatment" for which the Department is obligated to pay pursuant to Sec. 1396d(r)(5). As previously noted, the Department has not based its refusal to make payment on any residual discretion it may have under Sec. 1396b(i)(1) to decline funding for transplants. The Department has, instead, rested exclusively on the established doctrine that a Medicaid-participating state is under no obligation to pay for experimental procedures, Rush v. Parham, 625 F.2d 1150, 1154-55 (5th Cir.1980). Thus, the Department has effectively conceded that it must pay for the transplant if its characterization of liver-bowel transplants as experimental falls outside of its admittedly substantial discretion.[4]
 
 
 9
 The theory supporting the proposition that states need not provide funding for experimental procedures is that such treatments are "medically un necessary." Rush, 625 F.2d at 1156 (emphasis supplied). Essentially, the Department has defined the phrase "necessary treatment," as used in Sec. 1396d(r)(5), to exclude all experimental treatments.[5] Tiffany acknowledges that this is a valid exercise of the Department's discretion.[6] She does argue though that the Department is wrong when it labels liver-bowel transplantation as an experimental procedure. This case boils down, therefore, to two relatively straight-forward questions: (1) is the Department's classification of liverbowel transplantation as experimental judicially reviewable[7] and (2) if so, what is the appropriate standard of review?
 
 
 10
 More than ten years ago, the Supreme Court held that 42 U.S.C. Sec. 1983, the procedural vehicle that brings this case to us, provides a cause of action for violations of federal statutes as well as the federal Constitution. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Since that time, the Court has recognized certain exceptions to this rule, one of which is relevant here. A plaintiff alleging a violation of a federal statute will not be permitted to sue under Sec. 1983 if "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of Sec. 1983." Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). A statute creates a right enforceable under Sec. 1983 if (1) it was intended to benefit the putative plaintiffs, (2) it imposes a binding obligation on the governmental unit rather than merely expressing a "congressional preference" for a certain kind of conduct and (3) the interest asserted by the plaintiff is not so vague and amorphous that it is beyond the competence of the judiciary to enforce. Wilder v. Virginia Hospital Association, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990).
 
 
 11
 We have previously held that Suter v. Artist M., --- U.S. ----, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), is not the death knell of the analytic framework established in Wilder. Clifton v. Schafer, 969 F.2d 278 (7th Cir.1992). In Clifton, we read Suter to hold that a Sec. 1983 action is unavailable if the federal statute at issue merely conditioned a state's receipt of federal funds on the adoption of a plan satisfying certain criteria. Id. at 284. Hence, if the Medicaid statute provided only that Medicaid-participating states must have in place a plan that provides for EPSDT services, Tiffany might not have a right cognizable under Sec. 1983. But the Medicaid statute goes on to define, in Sec. 1396d(r), what is meant by EPSDT services, and the Secretary of the Department of Health and Human Services has promulgated regulations that further specify, in copious detail, those services for which a Medicaid-participating state must provide payment in order to discharge its obligation to make EPSDT services available to all qualified individuals. 42 C.F.R. Secs. 441.56-441.62 (1992).[8] We noted in Clifton that a cause of action under Sec. 1983 would lie "when the statute and regulations set forth in some detail" the factors to be considered in ascertaining whether a state has complied with a federal mandate. Id. at 284 (quoting Artist M., --- U.S. at ----, 112 S.Ct. at 1368). Accord Stowell v. Ives, 976 F.2d 65 (1st Cir.1992). The quoted portion of Artist M., in turn, included a citation to Wilder. 496 U.S. at 519 n. 17, 110 S.Ct. at 2522 n. 17. We thus conclude that Wilder guides our analysis here.[9]
 
 
 12
 There can be little doubt that the first two Wilder factors have been satisfied in this case. States participating in the Medicaid program must provide EPSDT services to all individuals under age 21. 42 U.S.C. Secs. 1396a(a)(10)(A) & 1396d(a)(4)(B). Thus, it is clear that five-year-old Tiffany is an intended beneficiary of EPSDT services, and that the Department has a binding obligation to provide them to her. We also do not believe that Tiffany has asserted a "vague and amorphous" interest. Certainly the Department has some flexibility in determining which procedures are medically necessary for recipients of EPSDT services. In fact, the Department, insofar as is relevant here, has exercised such authority in excluding experimental treatments from covered services. And, in medical parlance, the word "experimental" is neither vague nor amorphous. Indeed, it is an "objective benchmark" against which the Department's actions may be measured. Wilder, 496 U.S. at 519, 110 S.Ct. at 2523.
 
 
 13
 Various courts have addressed the meaning of "experimental," as that word is used to refer to medical procedures. The former Fifth Circuit adopted what we believe to be a workable definition of that term, which we quote in its entirety:
 
 
 14
 The clearest articulation of the considerations that go into determining whether a particular service is experimental is found in a letter Medicare uses to explain to its clients and providers why a service is ineligible for reimbursement:
 
 
 15
 In making such a decision [whether to provide payment for a particular service], a basic consideration is whether the service has come to be generally accepted by the professional medical community as an effective and proven treatment for the condition for which it is being used. If it is, Medicare may make payment. On the other hand, if the service is rarely used, novel or relatively unknown, then authoritative evidence must be obtained that it is safe and effective before Medicaid may make payment.
 
 
 16
 Rush v. Parham, 625 F.2d 1150, 1156 (5th Cir.1980) (citing Enclosure # 2 to Intermediary Letters Nos. 77-4 & 77-5 [1976 transfer binder] Medicare & Medicaid Guide (CCH) p 28,152 (1976)). Clearly, the best indicator that a procedure is experimental is its rejection by the professional medical community as an unproven treatment. The quoted passage suggests, however, that different definitions of "experimental" may be necessary depending upon the notoriety of the treatment under review. Indeed, certain procedures may be so new and, as a result, relatively unknown, that the medical community may not yet have formed an opinion as to their efficacy.[10] We agree with the court in Rush that such procedures are not per se experimental. If "authoritative evidence" exists that attests to a procedure's safety and effectiveness, it is not "experimental."[11]
 
 
 17
 We note that the definition of "experimental" that we offer hardly deviates, if it does at all, from the criteria the Department has developed in determining whether or not a particular procedure falls into the category of experimental. These criteria are:
 
 
 18
 (1) The current and historical judgment of the medical community as evidenced by medical research, studies, journals or treatises.
 
 
 19
 (2) The extent to which Medicare and private health insurers recognize and provide coverage for the service.
 
 
 20
 (3) The current judgment of experts and specialists in the medical specialty area in which the service is applicable or used.
 
 
 21
 Wis.Admin.Code Sec. HSS 107.035(2). Essentially, we conclude only that a federal court may review (1) the Department's definition of "experimental" to ensure that it reasonably comports with our explanation of that term, which is, we believe, consistent with current medical opinion and (2) the question whether the Department reasonably applied this definition of experimental to the liver-bowel transplantation at issue here.
 
 
 22
 We stress that the district court's review of the Department's actions is not plenary. The Court noted in Wilder that when a state has "substantial discretion in choosing among reasonable methods" of complying with a federal mandate, the "standard under which a court reviews" the state's compliance will be adjusted accordingly. 496 U.S. at 519, 110 S.Ct. at 2523. We reiterate that the Department has significant discretion to decide which treatments to cover. Accordingly, the district court may decide only whether the Department's determination that the liver-bowel transplant procedure is experimental is reasonable. See Rush, 625 F.2d at 1157.
 
 
 23
 For the foregoing reasons, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 24
 RIPPLE, Circuit Judge, dissenting.
 
 
 25
 Under the principles enunciated by the Supreme Court of the United States in Suter v. Artist M., --- U.S. ----, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), it is not open to the federal courts to review the determination of Wisconsin that it will not fund a liver-bowel transplant because it deems such a procedure to be experimental in nature. As the district court noted, Wisconsin authorities acted well within the framework of the Medicaid structure when they determined to fund some transplants, but to exclude those of an experimental nature. I do not believe that the Medicaid statute and its regulations can be read to confer on an individual the unambiguous right to contest the state's determination that a liver-bowel transplant is experimental. Accordingly, I agree with the district court that the plaintiff has no right enforceable under 42 U.S.C. Sec. 1983.
 
 
 26
 Accordingly, I respectfully dissent.
 
 
 
 *
 Hon. Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation
 
 
 [1]
 Miller sued Gerald Whitburn in his capacity as Director of the Wisconsin Department of Health and Social Services. Since the Department is the real party in interest, we adopt the convention of referring to him as "the Department."
 
 
 [2]
 Section 1396b(i) provides, in relevant part, that the federal government will not reimburse states for organ transplant procedures
 unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that--
 (A) similarly situated individuals are treated alike; and
 (B) any restriction, on the facilities or practitioners which may provide such procedures, is consistent with the accessibility of high quality care to individuals eligible for the procedures under the State plan....
 42 U.S.C. Sec. 1396b(i)(1).
 
 
 [3]
 We, of course, can appraise an administrative agency's decision only in the light of the reasons the agency gave in reaching it. Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943)
 
 
 [4]
 The Medicaid statute is clear that Medicaid-participating states must provide funding for EPSDT services, and there is also no doubt that Tiffany is entitled to all EPSDT benefits. If the proposed liver-transplant procedure is as effective as Tiffany alleges, we think it clear that it is for her a needed treatment. However, we cannot assume such effectiveness because the Department has determined that the procedure is experimental. This is the only thing that stands between Tiffany and public funding
 
 
 [5]
 Section 1396d(r)(5) itself, of course, merely defines, in part, the meaning of "early and periodic screening, diagnostic, and treatment services."
 
 
 [6]
 The rule that experimental procedures are not covered by Wisconsin's Medicaid plan is codified at Wis.Admin.Code Sec. HSS 107.03(4)
 
 
 [7]
 This is the same as asking whether the provisions of the Medicaid statute pertaining to EPSDT services create an enforceable federal right to "necessary treatment."
 
 
 [8]
 The Secretary has yet to issue regulations dealing specifically with Sec. 1396d(r)(5), which was added to the Medicaid statute in 1989
 
 
 [9]
 We held in Clifton that a complaint alleging "an isolated violation of a concededly legal plan" was not actionable under Sec. 1983. 969 F.2d 285. But that is not this case. Here, Tiffany complains that Wisconsin's entire Medicaid plan has run afoul of applicable federal statutes and regulations because, by failing to cover liver-bowel transplants, it has ignored Sec. 1396d(r)(5)'s requirement to provide coverage for all "necessary treatments." Relying on Wilder, we held in Clifton that such suits may be brought under Sec. 1983. Id. 969 F.2d at 284
 
 
 [10]
 We cannot tell from the present record whether liver-bowel transplantation is such a procedure
 
 
 [11]
 The safety of a new procedure may be determined by balancing its benefits against its attendant risks. McLaughlin v. Williams, 801 F.Supp. 633, 639 (S.D.Fla.1992) (citing Maxwell J. Mehlman, Health Care Cost Containment and Medical Technology: A Critique of Waste Theory, 36 Case W.Res.L.Rev. 778, 785 (1986)). The effectiveness of a procedure may be ascertained by considering such factors, among others, as: (1) the mortality of patients over the period in which the procedure has been performed; (2) how often it has been performed, and how successful it has been; (3) the reputation of the doctors and medical centers performing the procedure, and their record in related areas; (4) the long-term prognosis of patients who have had the procedure performed on them and (5) the extent to which medical science in related areas has developed rapidly. Id