**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM W. WATSON, JR.; CHARLES
E. PAPST, JR., by and through his
next friend, Nida Morris; ROBERT
WOODFORD, by and through his
next friend, Anita Geistlinger;
HEIDI HALTER, by and through her
next friend Hayley Adams; AMAR
JUSLEN, by and through his next
friend, Raul Juslen; IRMA RADTKE,
by and through her next friend,
Hans Radtke; SHELLI A. CAMERON;
and OREGON ADVOCACY CENTER,
     *Plaintiffs-Appellants,*

   v.

GARY WEEKS, in his official
capacity as Director, Oregon
Department of Human Services;
LYNN READ, in her official
capacity as Acting Administrator
of the Office of Medical
Assistance Program; and JAMES
TOEWS, in his official capacity as
Acting Administrator, Seniors and
People with Disabilities,
     *Defendants-Appellees.*

No. 04-35704

D.C. No.
CV-03-00227-HA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer Haggerty, District Judge, Presiding

Argued and Submitted
December 13, 2005—Portland, Oregon

1509

Filed February 8, 2006

Before: Procter Hug, Jr., Susan P. Graber, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hug

**COUNSEL**

Lauren K. Saunders, National Senior Citizens Law Center, Washington, D.C., for the appellants.

Janet A. Metcalf, Assistant Attorney General, Salem, Oregon, for the appellees.

Bruce Vignery, AARP Foundation Litigation, Washington, D.C., and Jane Perkins, National Health Law Program, Chapel Hill, North Carolina, for *amici curiae*.

**OPINION**

HUG, Circuit Judge:

Seven Medicaid-eligible Oregon residents and the Oregon Advocacy Center (collectively the "Plaintiffs") appeal the district court's order dismissing their action against Oregon state health officials, seeking declaratory and injunctive relief. Their appeal presents an issue of first impression for this circuit: whether certain provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10) and 1396a(a)(17), create individual rights enforceable under 42 U.S.C. § 1983 ("section 1983").

The seven individual plaintiffs, who are seniors and disabled individuals, had received home and community-based services as an alternative to Medicaid institutional nursing facility services. They lost their Medicaid eligibility, however, when the Oregon Department of Human Services (the "Department") scaled back the state's Medicaid program in the face of a budget crisis. Plaintiffs sued officials in the Department under section 1983 in federal district court. The individual plaintiffs alleged that they required the level of care that entitles them to nursing facility services under the Medicaid Act. They further alleged that the Department's actions violated both section 1396a(a)(10), which requires states to provide nursing facility services to eligible individuals, and section 1396a(a)(17), which requires states to use reasonable standards in setting Medicaid eligibility.

The district court granted the Department's motion to dismiss the complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), concluding that the Medicaid Act provisions in question do not create individual rights enforceable through section 1983. In dismissing the case, the court also denied Plaintiffs leave to amend their complaint.

Plaintiffs appeal the dismissal of their complaint and the denial of leave to amend. We have jurisdiction under 28

U.S.C. § 1291, and we hold that section 1396a(a)(10) creates an individual right enforceable under section 1983. We also hold that section 1396a(a)(17) does not create such an individual right. We do not reach the question of the district court's denial of leave to amend. The district court is thus affirmed in part, and reversed in part. We remand for further proceedings consistent with this opinion.

I

## BACKGROUND

A. *The Medicaid Framework*

Medicaid is a cooperative Federal-State program with the "purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of . . . individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. States choosing to participate in the program, such as Oregon, must develop a medical assistance plan meeting the approval of the federal Secretary of Health and Human Services (the "Secretary"). *See id.* A participating state receives federal reimbursement for "medical assistance" that it renders under its approved plan. *See id.*

The "medical assistance" provided by a state plan must include certain minimum services to "all individuals" who are financially eligible. *See* 42 U.S.C. § 1396a(a)(10)(A) (identifying the seven subsections of 42 U.S.C. § 1396d(a) that describe the minimum services). Among the services that must be provided are "nursing facility services (other than services in an institution for mental diseases) for individuals 21 years of age or older." 42 U.S.C. § 1396d(a)(4)(A). The Medicaid Act defines a "nursing facility" as an institution primarily engaged in providing skilled nursing care, rehabilitation services, or regular health-related care and services (above the level of room and board) available only in institu-

tions. *See* 42 U.S.C. § 1396d(c) (referring to 42 U.S.C. § 1396r(a) for definition); 42 U.S.C. § 1396r(a)(1).

A state plan must also provide "reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan," 42 U.S.C. § 1396a(a)(17), and must include necessary safeguards to assure that eligibility for services is provided "in a manner consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C. § 1396a(a)(19).

A related provision of Medicaid is the Home and Community Based Services ("community-based services") waiver program. A community-based services waiver permits a state plan to include as "medical assistance" certain home and community-based services rendered to individuals who otherwise would require nursing facility care that could be reimbursable under the state plan. *See* 42 U.S.C. § 1396n(c)(1). A waiver program must include a method for assessing whether possible service recipients need inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally ill. 42 U.S.C. § 1396n(c)(2)(B). The implementing regulations for § 1396n(c)(1) provide that a state may terminate its waiver at any time upon notice to the recipients and Secretary. *See* 42 C.F.R. § 441.307. A waiver may also be modified at any time, subject to the Secretary's approval. *See* 42 C.F.R. § 441.355.

B. *Oregon's Community-Based Services Waiver*

Oregon initiated its community-based services waiver program in 1981. The waiver included the Client Assessment and Planning System, whereby the state classified eligible individuals into service priority levels based on medical need; the levels number from one to eighteen, with level one reflecting the most urgent medical need.[1] Oregon uses a single set of

---

[1] The service priority levels are codified in Oregon's administrative rules. OR. ADMIN. R. 411-015-0010 (2005).

criteria for determining eligibility, whether services are in nursing facilities or community based.[2] The original waiver provided care to all individuals assessed at levels one through seventeen. The Department also made community-based services available to any person eligible for institutional nursing care, leading to a large reduction in the services that had to be provided at nursing facilities.

More recently, however, Oregon has eliminated coverage for some service levels, purely to cut state spending. On January 27, 2003, due to budget difficulties, the Department submitted a proposed waiver modification to eliminate eligibility for individuals in service levels fifteen to seventeen. The Secretary approved the modification. On February 24, 2003, the Department successfully requested another modification: the elimination of eligibility for individuals in levels ten to fourteen. The Oregon legislature subsequently restored funding through August 31, 2003, for service levels ten and eleven, and restored levels ten through thirteen for the 2003-2005 budget. Current Oregon regulations reflect these limitations, providing that only those individuals in levels one through thirteen are eligible for services.[3]

Under Oregon's cutbacks, individuals who are deemed ineligible for nursing facility or community-based services cannot challenge the state's decision to eliminate eligibility of a service level, but may challenge only their placement into their particular service level. Oregon estimated that elimination of levels fifteen through seventeen affected 4,000 individuals in community-based settings and 85 individuals in nursing facilities. The elimination of levels ten through fourteen was projected to terminate services for 6,100 individuals

---

[2]*See* OR. ADMIN. R. 411-015-0100 (2005) (establishing eligibility for nursing facility and community-based services based on the service priority levels of OR. ADMIN. R. 411-015-0010).

[3]OR. ADMIN. R. 411-015-0015(1) (2005) (rule is entitled "Current Limitations").

in community-based settings and 300 individuals in nursing facilities.

## II

## COURT PROCEEDINGS

On February 20, 2003, Plaintiffs filed a complaint against the Department in federal district court for the District of Oregon.[4] On March 24, 2003, before the Department had responded, Plaintiffs filed a First Amended Complaint. The amended complaint set forth five claims for relief; Plaintiffs are appealing only the district court's dismissal of the first three of these claims. The first claim alleged that the Department's withdrawal of eligibility violated, *inter alia*, 42 U.S.C. § 1396a(a)(10), which requires that state Medicaid plans provide nursing facility services to eligible individuals. The second claim alleged that the Department's actions violated, *inter alia*, 42 U.S.C. § 1396a(a)(17)'s "reasonable standards" requirement. The third claim alleged that the Department violated 42 U.S.C. § 1396a(a)(17) by assessing Plaintiffs' medical need for nursing facility services using agents who lacked the necessary professional qualifications and training and who employed subjective and inaccurate judgments.

On April 22, 2003, the Department moved to dismiss the claims under FRCP 12(b)(6). On November 24, 2003, the magistrate judge filed a report that recommended granting the motion. On December 10, 2003, Plaintiffs filed objections to the magistrate judge's findings and recommendations. They

---

[4]Plaintiffs requested, among other remedies, a preliminary injunction enjoining the Department from terminating services to persons assessed at service levels ten through seventeen. On June 16, 2003, the district court denied the Plaintiffs' preliminary injunction request. Plaintiffs interlocutorily appealed, and the Ninth Circuit granted the Department's motion to dismiss the appeal as moot, because the district court had in the meantime entered an order dismissing the action. *Watson v. Thorne*, 107 Fed. Appx. 150 (9th Cir. 2004) (unpublished order).

stated that they were "entitled to an opportunity to amend the complaint," identifying two ways in which their amended complaint might be amended further. First, to avoid any misperception that Plaintiffs were alleging a right to community-based services, rather than nursing facility services, Plaintiffs stated that they could "emphasize more strongly that they assert a statutory right" to nursing facility services. Second, Plaintiffs stated they could add causes of action under the Supremacy Clause.

On June 25, 2004, the district court entered a judgment and order that granted the Department's 12(b)(6) motion. The district court adopted the findings and recommendations of the magistrate judge. In the order, the district court also denied Plaintiffs leave to amend their complaint. The court noted that Plaintiffs already had amended their complaint "and that the opposing parties could suffer significant prejudice from plaintiffs' amendment at this stage in the litigation, after the extensive briefing and arguments that have been presented." In addition, the court noted "the apparent futility of amendment under the binding authorities as presently interpreted." The district court entered final judgment against Plaintiffs on June 25, 2004. Plaintiffs timely filed a Notice of Appeal on July 21, 2004.

## III

## STANDARD OF REVIEW

We review *de novo* the district court's decision to grant a motion to dismiss pursuant to FRCP 12(b)(6). *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005). We accept as true all well-pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party. *Id*. A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. *Pacheco v. United States*, 220 F.3d 1126, 1129 (9th Cir. 2000).

IV

**STATUTORY ANALYSIS**

It may be helpful to provide a brief explanation of the applicable law for determining whether a particular federal statute can be enforced through a private right of action under section 1983. Under section 1983, persons are liable if they act under color of law to deprive individuals of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In *Wilder v. Virginia Hospital Ass'n*, the Supreme Court allowed a section 1983 action by health care providers to enforce a reimbursement provision of the Medicaid Act requiring "reasonable and adequate" payment, holding that the provision explicitly conferred specific monetary entitlements upon the plaintiffs. 496 U.S. 498, 501-02 (1990), *superseded on other grounds by statute as discussed in Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931 (9th Cir. 2005).[5] The *Wilder* Court explained that the provision required the state plan to provide for reimbursement to facilities and that the intent to benefit such facilities was unmistakable. *Id.* at 510.

In *Suter v. Artist M.*, the Court distinguished *Wilder* and found no section 1983 right for parents and children who sued

---

[5]The provision at issue in *Wilder* read:

a State plan for medical assistance must —

provide . . . for payment . . . of the hospital services . . . provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State . . . ) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities . . . .

*Wilder*, 496 U.S. at 502-03 (quoting 42 U.S.C. § 1396a(13)(A) (1982 & Supp. V)).

under the Adoption Assistance and Child Welfare Act of 1980, because "reasonable efforts" to keep children out of foster homes imposed only "a rather generalized duty" on the state and conferred no individualized rights.[6] 503 U.S. 347, 363 (1992). The *Suter* Court explained that *Wilder*'s term "reasonable and adequate" was accompanied by sufficiently detailed guidance to a court that it could be judicially enforced. *Suter*, 503 U.S. at 359. By contrast, the statutory term in *Suter*, "reasonable efforts," provided no such guidance and thus a court could not readily ascertain the outlines of the alleged right. *Id.* at 359-60. *Suter* has been since limited as a bar to finding a section 1983 right; Congress responded to the opinion by enacting the "*Suter* fix," 42 U.S.C. §1320a-2, which blocks any Medicaid Act provision from being deemed unenforceable by an individual merely because the provision contains state plan requirements.[7]

---

[6]The relevant provision was:

  (a)  Requisite features of State plan

    In order for a State to be eligible for payments . . ., it shall have a plan approved by the Secretary which —

    . . . . .

    (3) provides that the plan shall be in effect in all political subdivisions of the State . . . ;

    . . . . .

    (15) . . . provides that . . . reasonable efforts will be made . . . to prevent the need for removal of the child from his home . . . .

*Suter*, 503 U.S. at 351 (quoting 42 U.S.C. §§ 671(a)(3), (15)(A) (1988 & Supp. I)).

[7]The statute reads in part:

  In an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan.

42 U.S.C. § 1320a-2.

**[1]** In 1997, the Supreme Court established the current three-prong test for determining whether a particular federal statute can be enforced through a private right of action under section 1983. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). The *Blessing* test requires: 1) that Congress intended the statutory provision to benefit the plaintiff; 2) that the asserted right is not so "vague and amorphous" that its enforcement would strain judicial competence; and 3) that the provision couch the asserted right in mandatory rather than precatory terms. *Id.* at 340-41. If the provision meets this test, then there is a presumption that it is subject to private enforcement under section 1983. *Id.* at 341. The presumption is rebutted, however, if Congress expressly or impliedly foreclosed enforcement under section 1983; an implied foreclosure occurs if Congress created "a comprehensive enforcement scheme that is incompatible with individual enforcement." *Id.*

The Supreme Court clarified the first prong of the *Blessing* test in *Gonzaga University v. Doe*, 536 U.S. 273 (2002). In *Gonzaga*, the Court held that congressional intent to benefit the plaintiff must be shown by statutory language "phrased in terms of the persons to be benefited." *Id.* at 284 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 692 n.13 (1979)). "[A]nything short of an unambiguously conferred right" will not support a 1983 action. *Gonzaga*, 536 U.S. at 283. The Court explained that section 1983 was intended to enforce "rights" as opposed to "benefits" or "interests," the latter two being too broad or vague for judicial enforcement. *Id.* To create enforceable rights, the statutory provision in question must focus on individual rights to benefits, rather than only the aggregate or systemwide policies and practices of a regulated entity. *See id. at* 287-88. As exemplars of statutory provisions that create section 1983 rights, the Court discussed Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, both of which use the wording "[n]o person . . . shall . . . be subjected to discrimination." *Id.* at 284 & n.3.

V

## EXISTENCE OF A PRIVATE RIGHT OF ACTION

As a threshold matter, we accept as true Plaintiffs' statement that those individuals assessed at levels one through seventeen need nursing facility services. *See ASW*, 424 F.3d at 974. Plaintiffs' medical need may indeed be more than a well-pleaded fact; the magistrate judge found that "[p]laintiffs are individuals whose serious medical problems and cognitive limitations require that they either be cared for in a nursing facility or receive an equivalent level of care in community settings."

A. *Section 1396a(a)(10) Creates a Private Right of Action*

[2] According to section 1396a(a)(10), a state plan for medical assistance must provide "for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5) . . . of section 1396d(a) of this title," to "all individuals" meeting specified financial eligibility standards. 42 U.S.C. § 1396a(a)(10).

In holding that this statutory provision creates a right enforceable by section 1983, we join five federal circuit courts that have already so held.[8] No circuit court has held that section 1396a(a)(10) does not create a section 1983 right.

---

[8]Post-*Gonzaga*, the Third and Fifth Circuits have found an enforceable section 1983 right in section 1396a(a)(10). *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (5th Cir. 2004). Pre-*Gonzaga*, three other federal circuits had held that a section 1983 right exists in section 1396a(a)(10). *Westside Mothers v. Haveman*, 289 F.3d 852 (6th Cir. 2002); *Pediatric SpecialtyCare, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472 (8th Cir. 2002); *Miller v. Whitburn*, 10 F.3d 1315 (7th Cir. 1993).

Other federal circuits have found section 1983 rights in other statutes that have wording akin to that in section 1396a(a)(10). In 2004, post-

**[3]** Our initial inquiry under the first prong of *Blessing* is whether section 1396a(a)(10) reveals a congressional intent to create an individualized right. We hold that it does. Significantly, the provision is phrased in terms of the individuals benefited. *See Gonzaga*, 536 U.S. at 283-84 (stating that a statute must be so phrased to create a section 1983 right). *Gonzaga* cited text from Titles VI and IX, "[n]o person . . . shall . . . be subjected to discrimination," as language conferring a section 1983 right. *Id.* at 284 & n.3. In the instant appeal, the relevant phrase is "[a] State plan . . . must provide for making medical assistance available . . . *to all individuals*." (Emphasis added). This language is unmistakably focused on the specific individuals benefited; it provides for medical assistance to all individuals who meet eligibility requirements. The wording of section 1396a(a)(10) is similar to the statutory provision we examined in *Price v. City of Stockton* — "Each grantee shall provide for reasonable benefits to any person"[9] — which we held "requires that benefits be provided to particular persons . . . [and] evinces a clear

---

*Gonzaga*, the Second Circuit held that 42 U.S.C. § 1396r-6, providing for transitional Medicaid assistance, creates an individual section 1983 right. *Rabin v. Wilson-Coker*, 362 F.3d 190, 201-02 (2d Cir. 2004) (statute requires that "each State plan approved under this subchapter must provide that each family which was receiving aid . . . shall . . . remain eligible for assistance under the plan").

The First Circuit also held post-*Gonzaga* that another similar Medicaid Act provision, section 1396a(a)(8), created an enforceable right under section 1983. *Bryson v. Shumway*, 308 F.3d 79, 88 (1st Cir. 2002) (statute requires that "medical assistance . . . shall be furnished with reasonable promptness to all eligible individuals").

Following its earlier holding in *Westside Mothers*, the Sixth Circuit, post-*Gonzaga*, has found a section 1983 right in section 1396a(a)(3) (Medicaid Act provision requiring a "fair hearing before the State agency" for individuals whose "claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness"). *Gean v. Hattaway*, 330 F.3d 758, 772-73 (6th Cir. 2003).

[9] 42 U.S.C. § 5304(k).

intent to create a federal right." 390 F.3d 1105, 1111 (9th Cir. 2004) (per curiam).[10]

There is strong support for this reading of section 1396a(a)(10) in holdings by the Third and Fifth Circuits, and we endorse these courts' reasoning. In *Sabree ex rel. Sabree v. Richman*, the Third Circuit noted that "it [is] difficult, if not impossible, as a linguistic matter, to distinguish the import of the relevant [Medicaid Act] language — 'A State plan must provide' — from the 'No person shall' language of Titles VI and IX." 367 F.3d 180, 190 (3d Cir. 2004). The court observed that the "individual focus" of section 1396a(a)(10) is "unmistakable." *Id.* The Third Circuit convincingly noted that the focus of section 1396a(a)(10) is on the individual protected, rather than on the entity. *Id.*

In *S.D. ex rel. Dickson v. Hood*, the Fifth Circuit similarly held that section 1396a(a)(10) features "precisely the sort of 'rights-creating' language identified in *Gonzaga* as critical to demonstrating a congressional intent to establish a new right." 391 F.3d 581, 603 (5th Cir. 2004).[11] According to the Fifth Circuit, the only "potentially material difference" between section 1396a(a)(10) and the *Gonzaga*-approved rights-creating language of Titles VI and IX is that section 1396a(a)(10) requires state action under a medical assistance plan. *Id.* However, the Fifth Circuit cited section 1320a-2, the

---

[10]In *Price*, we interpreted a provision of the Housing and Community Development Act requiring assistance to residents displaced by federally-funded redevelopment activities:

> Each grantee shall provide for reasonable benefits to any person involuntarily and permanently displaced as a result of the use of assistance received under this chapter to acquire or substantially rehabilitate property.

42 U.S.C. § 5304(k); *see* 390 F.3d at 1112.

[11]In *ASW v. Oregon*, we approvingly cited this sentence of *S.D.* in our discussion of the first prong of *Blessing*. 424 F.3d 970, 976 (9th Cir. 2005).

"*Suter* fix," to establish that this provision in section 1396a(a)(10) is not unenforceable merely because it requires action under a state plan. *Id.*

Within this circuit, we recently implied that section 1396a(a)(10) may create a section 1983 right. In *Sanchez v. Johnson*, we undertook a *Blessing* analysis and held that another Medicaid Act provision, section 1396a(a)(30)(A), failed the first prong. 416 F.3d 1051, 1062 (9th Cir. 2005). In so doing, we cited *Sabree* and contrasted section 1396a(a)(30)(A) with section 1396a(a)(10):

> Although 42 U.S.C. § 1396a(a) sets out a comprehensive list of requirements that a state plan must meet, it does not describe every requirement in the same language. Some requirements, such as those addressed in *Sabree* [§ 10], focus on individual recipients, while others are concerned with the procedural administration of the Medicaid Act by the States and only refer to recipients, if at all, in the aggregate. Section 30(A) is one of the latter provisions . . . .

*Sanchez*, 416 F.3d at 1062.

For contrast, it may be helpful to discuss a Medicaid Act provision that we have held did not create a section 1983 right. In *San Lazaro Ass'n v. Connell*, 286 F.3d 1088, 1099 (9th Cir. 2002), we held that 42 U.S.C. § 1396a(a)(5)'s requirement that a state "provide for the establishment . . . of a single State agency to administer . . . the [State's] plan," although for the benefit of medical providers, did not give providers a section 1983 right because it is "a structural programmatic requirement that facilitates federal oversight of state Medicaid programs."[12] Indeed, section 1396a(a)(5) fails

---

[12]Section 1396(a)(5) mandates that a participating state "provide for the establishment or designation of a single State agency to administer or to supervise the administration of the [State's] plan."

to mention providers at all. It is clearly directed at the aggregate practices of a regulated entity, the state. The wording of section 1396a(a)(10) is sharply different: Congress used "all individuals" as a focal term and established entitlements to specific benefits for individuals.

**[4]** In addition to meeting the first prong under *Blessing*, section 1396a(a)(10) meets the second and third prongs. It sets forth explicitly what nursing facility services must be offered, through reference to particular provisions of section 1396d(a). These provisions supply concrete and objective standards for enforcement; they are hardly vague and amorphous. *See Suter*, 503 U.S. at 370 (Blackmun, J., dissenting) (explaining that to be judicially enforceable, a right must be expressed at least in terms of objective standards). Section 1396a(a)(10) is also expressly worded in mandatory, not precatory terms; it obviously sets out specific requirements for state plans. *See Wilder*, 496 U.S. at 512 (finding that a Medicaid Act provision that a state plan "must" provide payments to hospitals couches an asserted right in mandatory, not precatory, terms).

**[5]** Because section 1396a(a)(10) requires states to provide particularly specified benefits to particularly specified types of individuals, there is a presumption of a section 1983 right under *Blessing*. *See* 520 U.S. at 341. The Department must rebut this presumption by demonstrating that Congress foreclosed the right. *See id.* The Supreme Court has stated that a court should "not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for deprivation of a federally secured right. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989) (citations and internal quotations omitted). The Medicaid Act does not expressly foreclose a section 1983 right, so the Department must show that Congress provided a comprehensive remedial scheme that is incompatible with individual actions under the *Blessing* analysis.

**[6]** The Department cannot rebut the presumption of a section 1983 right.[13] Although there are state administrative procedures available to Plaintiffs under section 1396a(a)(3), "[t]he availability of state administrative procedures ordinarily does not foreclose resort to § 1983." *Wilder*, 496 U.S. at 523. In *Wilder*, medical providers had the right to contest individual claims for payment before a state agency, but could not challenge the overall method by which payment rates were calculated. *Id.* The Court found that such "limited" administrative procedures could not be considered comprehensive and could not show congressional intent to foreclose a section 1983 right. *Id.* In the instant appeal, the administrative rights granted by the Department are similar to those in *Wilder*; individuals may only appeal their service level determination, not the state's underlying decision to not serve individuals in certain levels. The limited rights available to Plaintiffs are also similar to those analyzed by this court in *ASW v. Oregon*, where we found that providing adoption assistance beneficiaries with a fair hearing before a state agency regarding individual benefit claims was not a comprehensive enforcement mechanism incompatible with a section 1983 action. 424 F.3d at 978. Plaintiffs have established a section 1983 right under section 1396a(a)(10).

B. *Section 1396a(a)(17) Does Not Create a Private Right of Action*

**[7]** We are the first federal circuit to address whether section 1396a(a)(17) creates a section 1983 right.[14] Section

---

[13]The Department's brief did not make any attempt to rebut the presumption.

[14]One published federal district court case has held that there is no private right implied under section 1396a(a)(17). *Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233, 1250 (D. Kan. 2004).

Three published federal district court cases have held that there *is* a private right implied under section 1396a(a)(17), and we have considered these cases but found them unpersuasive. *See Mendez v. Brown*, 311 F. Supp. 2d 134, 139 (D. Mass. 2004); *Markva v. Haveman*, 168 F. Supp. 2d 695, 711 (E.D. Mich. 2001); *Smith v. Palmer*, 24 F. Supp. 2d 955, 963-64 (N.D. Iowa 1998).

1396a(a)(17) provides that a state plan for medical assistance "must . . . include reasonable standards (which shall be comparable for all groups . . . ) for determining eligibility for and the extent of medical assistance under this plan."

**[8]** There is insufficient evidence of congressional intent to create a section 1983 right under this provision. Section 1396a(a)(17) is a general discretion-granting requirement that a state adopt reasonable standards. It fails to provide an "unambiguously conferred right" and fails the first prong of *Blessing*. The key wording of section 1396a(a)(17) fails to even mention individuals or persons. Unlike section 1396a(a)(10), section 1396a(a)(17) is not framed in terms of the individuals benefited, which is fatal under *Gonzaga* to the existence of a section 1983 right. *See* 536 U.S. at 284. Moreover, the parenthetical statement in section 1396a(a)(17) that the state's reasonable standards "shall be comparable for all groups" puts a focus on the standards themselves and on their aggregate impact, rather than on the benefits to individuals.

**[9]** Even if section 1396a(a)(17) passed the first *Blessing* prong, it clearly fails the second prong, because the right it would create is too vague and amorphous for judicial enforcement. The provision does not provide meaningful instruction for the interpretation of "reasonable standards" in terms of medical need. It provides guidance only regarding the financial means of a potential beneficiary. *Wilder* found the term rates that "are reasonable and adequate" to be objective and thus judicially manageable because the statute tied it to a benchmark of the "efficiently and economically operated facility." *Wilder*, 496 U.S. at 519-20; *see also Suter*, 503 U.S. at 370-71 (Blackmun, J., dissenting) (explaining that a judicially manageable right need not be mechanical, but must be tied to some objective standard). However, the only guidance of section 1396a(a)(17)(A) regarding medical need eligibility is that state standards be "consistent with the objectives of this subchapter." Judicial enforcement of section 1396a(a)(17) under Plaintiffs' argument would require a court to delve into

the medical necessity of particular types of care. If Congress had intended that result, it would have provided more concrete standards in the statute for determining eligibility based on medical need.

## VI

## DENYING PLAINTIFFS LEAVE TO AMEND

The parties devoted little briefing and no argument to this portion of the appeal, and we find it unnecessary to reach this question. Once proceedings resume on the remand of Plaintiffs' section 1983 claim under section 1396a(a)(10), Plaintiffs will have an opportunity anew to seek amendment of the pleadings.

## VII

## CONCLUSION

Plaintiffs have a private right of action under section 1983 to enforce section 1396a(a)(10). They do not have a section 1983 right under section 1396a(a)(17). We AFFIRM the district court in part, and REVERSE in part. The case is REMANDED to the district court for further proceedings consistent with this opinion.

Each party shall bear their own costs on appeal.